# 1136

See also D.C., 304 F.Supp. 1121.

In Proceedings for the Reorganization of a Railroad.

In the Matter of the NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Debtor.

No. 30226.

United States District Court
D. Connecticut.

July 28, 1969.

Lester C. Migdal, Migdal, Low, Tenney & Glass, New York City, and Lander, Greenfield & Krick, New Haven, Connecticut, for Harry Rebell and Lester W. Rubin as The New York, N. H. and H. R. R. Co. First Mortgage 4% Bondholders Committee.

Dennis N. Garvey, New Haven, Conn., and Mulholland, Robbie & Hickey, Washington, D. C., for Railway Labor Executives' Assn.

Louis J. Lefkowitz, Atty. Gen., State of New York, Albany, New York, for State of New York.

Myron S. Isaacs, New York City, for Oscar Gruss & Son.

Frank J. Fazzano, Director of Business Regulation, State of Rhode Island, Providence, R. I., for State of Rhode Island.

Hon. Robert K. Killian, Atty. Gen. of Connecticut, Hartford, Conn., for State of Connecticut.

Ulrich Schweitzer, General Corporate Counsel, New York City, for Penn Central Co.

Robert H. Quinn, Atty. Gen. Commonwealth of Massachusetts, Boston, Mass., for Commonwealth of Massachusetts.

Wilkie Bushby, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Chase Manhattan Bank.

Simpson, Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Co.

Hale, Grant, Meyerson, O'Brien & McCormick, New York City, for Providence & Worcester R. Co.

Paul A. Sweeney, Sp. Asst. to Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for the United States.

Walter A. Kernan, Carter, Ledyard & Milburn, New York City, for United States Trust Company of New York.

James William Moore, Counsel to Trustee, New York, New Haven & Hartford Railroad Co., New Haven, Conn., for Interstate Commerce Commission.

ORDER ADJUDGING THE PRICE TO BE PAID BY PENN CENTRAL COMPANY; APPROVING AND DISAPPROVING CERTAIN STEP II PROVISIONS OF THE PLAN; AND REMANDING TO THE COMMISSION

ANDERSON, Circuit Judge (sitting by designation).

By order entered August 12, 1968, this court disapproved the First Step of the Plan of Reorganization of the Debtor certified to it on March 29, 1968 by the Interstate Commerce Commission (the "Commission") and referred the proceedings back to the Commission for further action. Thereafter, on December

2, 1968, pursuant to § 77(d) of the Bankruptcy Act, the Commission certified to this court a Plan of Reorganization for the Debtor (the "Plan") as set forth in the Commission's Fourth Supplemental Report on Reconsideration and Further Hearing, dated November 25, 1968 (334 I.C.C. 25). By Order of December 3, 1968, this court directed that any objections to the Plan and claims for equitable treatment be filed on or before December 16, 1968. On December 20, 1968, this court held a hearing on the Plan limited, however, solely to the issue of inclusion of the Debtor's railroad operations in Penn Central Company (the "Penn Central") in view of circumstances then existing. This court then entered Order No. 559, dated December 24, 1968, directing that the Trustees of the property of the Debtor (the "Trustees") convey the Debtor's assets to the Penn Central and effect the inclusion of the Debtor in Penn Central, effective at 11:59 p. m. on December 31, 1968, and that Penn Central then carry out such inclusion and pay to the Trustees certain specified consideration, assume certain obligations and liabilities and cancel and surrender specified Trustees' Certificates, all as provided in the Plan. On January 29, 1969, the Trustees reported as to compliance with Order No. 559, and this court entered Order No. 563, dated February 27, 1969, approving the report.

Subsequently, after notice to all parties in interest, this court held a hearing on March 31, April 1 and April 2, 1969 on the issue of price and the distributive or Step II provisions of the Plan; and on May 28, 1969 filed its Memorandum of Decision On the Issue of the Price to be Paid for the Debtor's Assets (the "Memorandum On Price") 304 F.Supp. 793. And, in connection therewith, having found that Penn Central is indebted to the Debtor for 50% of the so-called excess income from the Grand Central properties for 1967 and 1968, and that this is not a part of the price to be paid by Penn Central for the Debtor's assets, this court entered its Order No. 572, dated May 28, 1969, adjudging that the sole remaining Trustee of the Debtor is entitled to a partial offset of $2,000,000 of the aforesaid amount against the partial settlement, then approved, between the Trustee and Penn Central pursuant to Section 7 of the Agreement dated April 21, 1966; and the matter having come on for final settlement this court entered its Supplemental Order No. 572, dated July 1, 1969, adjudging that Penn Central was indebted to the Trustee in the amount of $3,377,903.07 on account of the aforesaid excess income for 1967 and 1968, approving the final settlement pursuant to Section 7 of the aforesaid Agreement, and adjudging that Penn Central pay the balance due of $758,940.16 to the Trustee of the Debtor.

I.

On June 9, 1969, this court entered its order to settle decree in accordance with the Memorandum On Price and the matter having come on for hearing and all parties in interest having been heard or been given an opportunity to be heard, this court now finds and concludes, as a matter of law, that:

1. The sums of (a) $15,386,000 as a consequence of possible delay in abandonment and (b) $6,695,000 as a bulk sales discount should not be deducted from the Commission's finding of liquidation value;

2. The value of the Harlem River and Oak Point Freight Yards is $22.539 million, which is an increase of $4.439 million over the amount found by the Commission;

3. The sum of $1.6 million should be added to liquidation value inasmuch as it was improperly deducted in respect of tax obligations;

4. The sum of $1.5 million should be deducted from the liquidation value inasmuch as it was improperly attributed to the so-called "CCBIs" to be issued by Boston and Providence Railroad Corporation;

5. The sum of $2,415,899 should be added to liquidation value inasmuch as

it was improperly deducted in applying the discount to present value found by the Commission; and

6. The value of the 950,116 shares of common stock delivered by Penn Central on December 31, 1968 to the Debtor is $83.1 million, subject to the provisions hereinafter set forth in ordering Paragraph B; and

ORDERS that:

A. The additional price to be paid by Penn Central to the Debtor is $29,035-899.

B. If at any time the market price of Penn Central common shares reaches and maintains 87½ per share on the New York Stock Exchange for a period of five consecutive days on which the Exchange is open and doing business (not counting days on which the Exchange is closed to trading) between the date of final consummation of the Plan of Reorganization and February 1, 1978, then and in that event it will be conclusively presumed that Penn Central has, in transferring the shares to the New Haven, made payment of the $83.1 million of the purchase price represented by the shares. If, however, the common shares of Penn Central do not reach and maintain the price as aforesaid, then the value of the shares will be determined by the average of the means between high and low prices of Penn Central shares on the New York Stock Exchange for the 30 business days next preceding February 1, 1978, on which the Exchange is actually operating and there are sales of Penn Central shares. Penn Central will forthwith become liable to pay in cash to the New Haven, or its successor or successors, the difference between said mean market prices of those 30 days and 87½ for each share of the block of 950,116 shares.

The benefit of this underwriting by Penn Central of any difference between the mean market prices of the shares for those 30 days and the higher price of 87½ per share and the right to recover that difference, inure only to the New Haven and its successor or succes-

sors, and do not follow the shares into the hands of a purchaser if they are sold. The right to recover the difference is, however, not lost to the New Haven even if it sells all or a portion of the 950,116 shares, provided, of course, that the circumstances, described as giving rise to the right, occur. The Penn Central is granted an option, operative between the date of final consummation of the Plan and February 1, 1978, to discharge its obligation to underwrite and pay the difference between such average market price and the higher 87½ at the end of the ten year period by paying on one or more blocks of 50,000 shares to the New Haven or its successor or successors, the difference between the mean market prices for sales of Penn Central common shares and 87½ per share as of a specific day of sales on the Exchange which shall previously have been designated by Penn Central in a written notice delivered to the New Haven at least 5 days prior to such market date.

## II.

On July 28, 1969 this court having filed its Memorandum of Decision on Distributive or Step II Portion of Fourth Supplemental Report and Order of Interstate Commerce Commission (the "Memorandum on Step II"), the court now finds and concludes, as a matter of law, that:

1. The additional price to be paid by Penn Central, as hereinabove adjudged by this court, is so much greater than that approved by the Three Judge Court in the Southern District of New York in its opinion on June 18, 1969, that it is not now feasible for this Reorganization Court to approve the Plan;

2. All costs and expenses referred to in *Class A* of Section II of the Plan should be paid in cash; and the provisions in Section V, 1, *Class A* should be modified accordingly;

3. The terms of the Trustees' Certificates referred to in *Class B* of Section II of the Plan should be observed; and the provisions of Section IV, 1, and

Section V, 1, *Class B* should be modified accordingly;

4. The Plan should provide that any claim covered by it can be settled and liquidated in a different manner than that provided in the Plan, subject to the approval of the Reorganization Court, up to the time of the consummation of the Plan or a time prior to consummation if the Commission finds that would be more feasible and proper;

5. Unsecured pre-reorganization taxes have no equity; and the Plan properly provides that they take nothing;

6. Pre-reorganization secured tax claims and related charges of State and local authorities are entitled to interest accrued thereon prior to July 7, 1961—the date the reorganization proceeding was instituted; but are not entitled to any post-reorganization interest. As thus construed, all of the provisions of *Class H* of Section V, 2, including disallowance of penalties, and that payment be made by issuance of income notes, are approved;

7. All of the provisions of *Class D* of Section V, 1, including disallowance of interest and penalties on post-reorganization claims of State and local authorities for taxes and related charges, and that payment be made by issuance of income notes, are approved;

8. Section V, 2, *Class J* of the Plan is approved insofar as it provides that the first mortgage bondholders are entitled to an accrual of interest up to but not beyond the effective date of the Plan; but insofar as it accords different treatment in the payment of principal and interest it is disapproved, and these bondholders should receive common stock for both principal and interest accrued as aforesaid;

9. Section V, 2, *Class K* of the Plan is modified to provide that the income bondholders are entitled to payment of their principal and interest accrued for the years 1957, 1958, and 1959; and is approved in other respects;

10. All other provisions of the Plan are approved, subject to the Commis-

sion's authority to implement the Plan and the modifications hereinabove set forth; and

ORDERS that:

A. The Plan is remanded to the Commission to be held by it until the issue of price to be paid by Penn Central is finally determined.

B. When the price is finally determined, the Commission may reconsider the Plan vis-a-vis the two system mortgages and other interested parties, to determine how the additional consideration, if any, is to be paid and whether this or a reduction in the price will require a modification in the structure of the Plan.

C. Subject to findings and conclusions 2–10, inclusive, and ordering paragraph B above, the Commission is authorized and directed to implement the Plan in any and all respects to the end that the Plan as revised will in all respects be fair, equitable and feasible.

D. This order is to be interpreted in accordance with this court's Memorandum on Step II.